UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-00858-KK-MARx** | Date: | March 3, 2026 |
|---|---|---|---|
| Title | ***G.S. v. Fereti Semaia, et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(In Chambers) Order GRANTING Petitioner's Ex Parte Application for Temporary Restraining Order and ORDERING Respondents to Show Cause [Dkt. 5]**

## I.
## INTRODUCTION

On February 23, 2026, petitioner G.S. ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Fereti Semaia, Jaime Rios, Todd M. Lyons, Kristi Noem, and Pamela Bondi ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On February 28, 2026, Petitioner filed the instant Ex Parte Application for Temporary Restraining Order ("Application"). Dkt. 5-1, Application ("App.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED**.

## II.
## BACKGROUND

### A. RELEVANT FACTS

Petitioner is a 40-year-old citizen of Armenia. Pet. ¶ 20; dkt. 5-4, Ex. A, Declaration of G.S. ("G.S. Decl.") ¶ 1. On July 31, 2024, Petitioner arrived at the United States-Mexico border seeking asylum relief. Pet. ¶ 1; G.S. Decl. ¶ 2. Upon his arrival, U.S. Customs and Border Patrol detained

Petitioner for a few hours before releasing him into the United States on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) ("Section 1182(d)(5)(A)").  Pet. ¶¶ 1, 41; see also dkt. 1-3, Ex. A; G.S. Decl. ¶ 2.  Sometime thereafter, Petitioner applied for asylum based on his fear of political persecution from government officials in Armenia.  G.S. Decl. ¶ 4.  Petitioner's wife and two sons are included in Petitioner's asylum application as derivative beneficiaries.  Id. ¶ 5.

On September 16, 2024, Petitioner was arrested and charged with a petty theft misdemeanor in California state court.  Pet. ¶ 46; see also dkt. 1-8, Ex. F ("Ex. F").  Petitioner pleaded not guilty to the misdemeanor and enrolled in a pre-trial diversion program.  Pet. ¶ 46; Ex. F at 1-4.  On April 7, 2025, the misdemeanor theft charge against Petitioner was dismissed after he successfully completed all terms and conditions of the diversity program.  Ex. F at 5-6.

On October 4, 2024, the U.S. Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") charging him as removable pursuant to Section 212(a)(7)(i)(I) of the Immigration and Nationality Act ("INA") for lacking proper entry documents at the time of his admission.  Pet. ¶ 50; dkt. 1-5, Ex. C ("Ex. C").  DHS further set Petitioner's master calendar hearing for July 21, 2025.  Ex. C at 1.  On November 13, 2025, DHS rescheduled Petitioner's hearing for January 9, 2029.  Pet. ¶ 51; see also dkt. 1-6, Ex. D.

On November 21, 2025, Petitioner applied for employment authorization pending adjudication of his asylum application.  Pet. ¶ 44; see also dkt. 1-7, Ex. E ("Ex. E").  On January 17, 2026, DHS approved Petitioner's application for employment authorization.  Pet. ¶ 44; Ex. E.

Since his release from immigration custody in 2024, Petitioner has complied with all requirements of his parole, including attending regular check-ins with ICE and undergoing supervision with an ankle monitor pursuant to ICE's Alternative to Detention ("ATD") program.  Pet. ¶¶ 5, 45; G.S. Decl. ¶ 3.

On February 8, 2026, an ICE agent called Petitioner claiming they were experiencing technical issues with his ankle monitor.  App. at 10-11.  The agent therefore instructed Petitioner to walk outside his house toward the next building.  Id. at 11.  When Petitioner stepped outside his house, ICE re-arrested Petitioner without notice.  Id.  ICE subsequently transferred Petitioner to Adelanto ICE Processing Center, where he remains detained today.  Pet. ¶ 53.

During his re-detention, Petitioner has been separated from his family, including his two-year-old son who is "extremely attached" to him.  App. at 20; G.S. Decl. ¶ 8.  Additionally, Petitioner has experienced medical issues resulting from his diabetes, which requires prescribed medication and constant monitoring by medical professionals.  App. at 10, 20.

**B.    PROCEDURAL HISTORY**

On February 23, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:** Substantive Due Process Violation of the Fifth Amendment to the U.S. Constitution ("Substantive Due Process Claim");
2. **Ground Two:** Procedural Due Process Violation of the Fifth Amendment to the U.S. Constitution ("Procedural Due Process Claim"); and

    3.    **Ground Three:** Violation of the Fourth Amendment to the U.S. Constitution ("Fourth Amendment Claim"); and

    4.    **Ground Four:** Violation of the Administrative Procedure Act ("APA Claim").

Pet. ¶¶ 54-79.

On February 28, 2026, Petitioner filed the instant Application, seeking, on the basis of all four grounds of relief raised in the Petition, an order (1) requiring his immediate release from Respondents' custody, (2) barring his re-detention absent either further order of the Court or a pre-deprivation hearing before a neutral arbiter, and (3) prohibiting his transfer outside of the Central District of California pending resolution of the Petition. App. at 8.

On March 3, 2026, Respondents filed an untimely Opposition to the Application.[1] Dkt. 7, Opposition ("Opp.").

This matter, thus, stands submitted.

## II.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

///

///

///

---

[1] On March 2, 2026, the Court ordered Respondents to file a Response to the Application "no later than March 3, 2026, at 10:00 a.m." Dkt. 6.

## III.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

**A.   LIKELIHOOD OF SUCCESS ON THE MERITS**

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).  Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his APA and Procedural Due Process Claims.[2]

**1.   APA Claim**

**a.   Applicable Law**

"The legal proposition that agencies may be required to abide by certain internal policies is well-established." Alcaraz v. Immigr. & Naturalization Serv., 384 F.3d 1150, 1162 (9th Cir. 2004). Under the APA, a court must "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right[;]" or "without observance of procedure required by law[.]" 5 U.S.C. § 706(2).

Under 8 U.S.C. § 1225(b)(2), a noncitizen who is arriving in the United States and "seeking admission" is subject to mandatory detention pending removal proceedings.  However, under Section 1182(d)(5)(A), DHS may, in its discretion, "parole into the United States temporarily under such conditions as [it] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).  Such parole "shall not be regarded as an admission of the [noncitizen]" and may be terminated when "the purposes of such parole [], in the opinion of the Secretary of Homeland Security, have been served." Id.  Upon the termination of parole, a noncitizen must "return . . . to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

The INA's implementing regulations under 8 C.F.R. § 212.5(e) ("Section 212.5(e)") set forth the relevant procedures for terminating a noncitizen's parole pursuant to Section 1182(d)(5)(A). Specifically, parole is automatically terminated "upon the departure from the United States of the [noncitizen]" or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1).  In all other cases, DHS may terminate parole only with written notice and "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in [8 C.F.R. § 212.5(a)], neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." Id. § 212.5(e)(2)(i).  Service of a charging document may constitute written notice of termination of parole. Id.

---

[2] Because the Court finds Petitioner has satisfied the TRO standard for his APA and Procedural Due Process Claims, the Court need not consider his Substantive Due Process Claim or Fourth Amendment Claim at this time.

      **b.**      **Analysis**

      Here, DHS failed to comply with the INA and its implementing regulations in terminating Petitioner's parole. As an initial matter, it does not appear, and Respondents do not argue, Petitioner departed from the United States after being granted parole or the term of Petitioner's parole have expired. Thus, it is undisputed Petitioner's parole was not automatically terminated under Section 212.5(e).

      Instead, Respondents appear to contend they provided sufficient written notice of Petitioner's parole termination by issuing and serving the October 4, 2024 NTA. Opp. at 5. This argument is unpersuasive. First, ICE's own conduct demonstrates it did not regard the NTA as a written notice of Petitioner's parole termination. For over a year after receiving the NTA, Petitioner continued to attend regular check-ins with ICE and undergo ankle monitoring pursuant to ICE's ATD program. App. at 9. Nonetheless, at no point after issuing the NTA did ICE attempt to return Petitioner "to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Rather, ICE continued to treat Petitioner's parole as valid by, among other things, allowing him to live freely in the community with his family. In fact, DHS granted Petitioner employment authorization less than one month before re-detaining him, further suggesting Petitioner's parole was operative up until his re-detention. App. at 10; see 8 C.F.R. § 274a.12(c)(11) (providing noncitizens paroled into the United States for humanitarian reasons or significant public benefit pursuant to Section 1182(d)(5)(A) may apply for employment authorization). To the extent Respondents now construe the NTA as written notice of termination, they fail to provide any basis for this change in position. See Y-Z-L-H v. Bostock, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) ("Post hoc explanations of agency action by counsel cannot substitute for the agency's own articulation of the basis for its decision." (citation modified) (quoting Arrington v. Daniels, 516 F.3d 1106, 1113 (9th Cir. 2008))).

      Second, even if ICE does in fact consider the October 4, 2024 NTA as a written notice of termination, the NTA fails to meet the statutory and regulatory requirements of Section 1182(d)(5)(A) and Section 212.5(e), respectively. Specifically, the NTA is "silent as to any finding that Petitioner's parole had served its purpose, that humanitarian reasons do not warrant Petitioner's presence in the country, or that he is a danger to the public or a flight risk." Y-Z-L-H, 792 F. Supp. 3d at 1146. Moreover, neither the NTA nor the Opposition provides any indication the decision to terminate Petitioner's parole was made "on a case-by-case basis" or "attend[ed] to the reasons [Petitioner] received parole." Kharb v. U.S. Dep't of Homeland Sec., No. EDCV 26-00656-DOC-Ex, 2026 WL 485765, at *2 (C.D. Cal. Feb. 17, 2026) (quoting Mata Velasquez v. Kurzdorfer, 2794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025)). Indeed, Respondents fail to articulate any reason, let alone one specified by statute or regulation as an appropriate basis for termination, for revoking Petitioner's parole. See Opp. at 4-5.

      Therefore, the Court finds Respondents failed to comply with the INA and its implementing regulations in terminating his parole and, thereby, acted arbitrarily, capriciously, and without observance of procedure required by law in violation of the APA. See Munoz Materano v. Arteta, 804 F. Supp. 3d 395, 422 (S.D.N.Y. 2025) (finding an APA violation where the respondents "fail[ed] to show on what grounds they might have revoked [the petitioner's] humanitarian parole"). Hence, Petitioner is likely to succeed on the merits of his APA claim.

///

### 2. Procedural Due Process Claim

#### a. Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U. S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews, 424 U.S. at 321.

#### b. Analysis

Here, applying the Mathews test, the Court finds Petitioner is likely to succeed on the merits of his Procedural Due Process Claim.

First, Petitioner has a substantial private interest in remaining out of immigration custody. As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process. See Sotomayor v. Bondi, No. EDCV 25-02939-CV-SSCx, 2025 WL 3691398, at *3 (C.D. Cal. Nov. 14, 2025) (noting noncitizens released on discretionary parole are entitled to due process). Further, as noted, Petitioner was released on parole pursuant Section 1182(d)(5)(A) shortly after he entered the United States and was apprehended by the United States Border Patrol. This release on parole gives rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) ("Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release." (citing Morrissey, 408 U.S. at 482)); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").

While the Government's initial decision to parole Petitioner was discretionary, see 8 U.S.C. § 1182(d)(5), that decision nonetheless contained an "implicit promise that parole will be revoked

only if he fails to live up to the parole conditions." Morrissey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). For over eighteen months, Petitioner relied on this promise to become "gainfully employed," live "with family and friends," and "form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. The length of Petitioner's release on parole further strengthens his private interest in his continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Therefore, Petitioner establishes a significant liberty interest in remaining out of immigration custody.

Second, the risk of erroneous deprivation is significant because Petitioner has not been afforded an opportunity to contest his detention. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). In releasing Petitioner on parole in 2024, DHS necessarily found Petitioner did not pose a significant flight risk or danger to the community. See 8 C.F.R. § 212.5(b) (permitting parole only where the noncitizen "present[s] neither a security risk nor a risk of absconding"). Respondents fail to demonstrate anything has changed since Petitioner's release to suggest Petitioner no longer meets these criteria. Indeed, the record suggests otherwise, as Petitioner has complied with all conditions of his parole, including attending regular check-ins with ICE and ankle monitoring. App. at 9. Indeed, Petitioner was apprehended when he voluntarily stepped outside his home in compliance with ICE's instructions. Id. at 11. Additionally, while Petitioner was charged with a misdemeanor for petty theft in 2024, the charge was dismissed after he successfully completed a diversion program, which included, among other things, 20 hours of community service. See Ex. F. Moreover, even if Petitioner had been convicted, such a minor misdemeanor conviction would not necessarily demonstrate he poses a danger to the community. See Singh v. Holder, 638 F.3d 1196, 1206 (9th Cir. 2011) (noting petty theft is a "relatively minor, non-violent offense[]" that does not "conclusively establish" dangerousness). Regardless, ICE's own conduct in continuing to allow Petitioner to live and work freely in the community demonstrate it did not find him to be a flight risk or danger to the community. The uncontroverted evidence thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, No. CV 25-11206-MCS-PVCx, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025).

Given the risk of erroneous deprivation, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. In contrast, without the additional procedural safeguard of a pre-detention hearing, ICE could, as it appears to have done so here, unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"); Juarez Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief

could result in the petitioner's indefinite detention "without any process"). Therefore, the risk of erroneous deprivation of Petitioner's liberty without a pre-deprivation hearing is high.

Third, Respondents have no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low. As discussed, Respondents have not shown Petitioner poses a flight risk or danger to the community, especially considering Petitioner's compliance with his parole conditions, ICE's own conduct in allowing Petitioner to live and work freely in the community, and other countervailing evidence in the record before the Court. Moreover, as noted, Respondents provide no other reason for terminating Petitioner's parole and re-detaining him. Thus, Respondent lacks any governmental interest in continuing to detain Petitioner. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). Further, Respondents do not show a pre-detention hearing imposes a significant financial or administrative burden. To the contrary, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). Therefore, ICE's interest in Petitioner's continued detention is minimal.

Respondents do not meaningfully address Petitioner's Procedural Due Process Claim. Rather, Respondents merely contend ICE's authority to terminate Petitioner's parole is "discretionary" and ICE complied with the INA's implementing regulations governing termination of parole. Opp. at 4-6. Respondents' argument is unpersuasive. As noted, Respondents fail to establish ICE, in fact, complied with Section 1182(d)(5)(A) or Section 212.5(e) in terminating Petitioner's parole. Moreover, even assuming ICE's compliance with the INA's implementing regulations, such compliance does not excuse ICE from providing Petitioner with due process or otherwise establish ICE afforded Petitioner adequate due process before his re-detention. See Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); Mody v. Warden, No. EDCV 25-3400-FMO-RAOx, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) ("[D]etermining whether respondents provided petitioner with notice required by regulation of a pending parole termination would not resolve the question before the court, i.e., whether respondents provided petitioner with sufficient due process prior to his re-detention."); Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a[n] individualized hearing prior to re-detaining the parolee."). Therefore, Respondents fail to show ICE provided Petitioner with due process prior to re-detaining him.

Hence, the Court finds Petitioner is likely to succeed on the merits of his Procedural Due Process Claim. Accordingly, because Petitioner has demonstrated a strong likelihood of success on the merits of his APA and Procedural Due Process Claims, the first and most important Winter factor weighs in favor of him.

## C.     LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Among other

harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, as stated above, Petitioner's parole has been unlawfully revoked, and Petitioner has been unlawfully detained in violation of his constitutional right to due process. While re-detained by ICE, Petitioner has been separated from his wife and sons and unable to support his family. App. at 10. Additionally, Petitioner has experienced medical issues related to his diabetes, which requires medication and stringent monitoring. Id. Hence, Petitioner and his family are – and will continue to be – irreparably harmed absent relief from this Court.

Accordingly, the second Winter factor weighs in favor of Petitioner.

## D.    BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his constitutional claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-86 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996.

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\*   \*   \*

Thus, because all four Winter factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief in the form of immediate release from immigration custody. While Respondents contend Petitioner is not entitled to release, see Opp. at 7-8, the Court rejects this argument.[3] As

---

[3] The Court further rejects Respondents' contention that Petitioner's current detention is governed by 8 U.S.C. § 1225(b) rather than 8 U.S.C. § 1226(a), as Petitioner has been present in the United States for over 18 months and thus is not "seeking admission." Accord Rodriguez-Acurio v. Almodovar, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at \*12-25 (E.D.N.Y. Nov. 28, 2025).

discussed above, Petitioner continues to suffer irreparable harm so long as he remains unlawfully re-detained. Thus, providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a pre-deprivation hearing required by due process. Cf. Esmail v. Noem, No. CV 25-08325-WLH-RAOx, 2025 WL 3030590, at *6 (C.D. Cal. Sep. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").

Further, Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, the last uncontested status is Petitioner's release on parole before his current re-detention. See Sotomayor, 2025 WL 3691398, at *6 (finding the petitioner's immediate release from custody was the appropriate relief where the petitioner was re-detained without due process). Accordingly, Petitioner's release from custody is the appropriate remedy. Accord Aviles-Mena v. Kaiser, No. 25-cv-06783-RFL, 2025 WL 2578215, at *7 (N.D. Cal. Sep. 5, 2025).

## IV.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:[4]

1. Petitioner's Application is **GRANTED**;[5]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody under the same conditions of his previous release on parole;
3. Respondents are **ENJOINED** from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
4. Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case;

---

[4] To the extent Petitioner seeks an order barring his removal to a third country without notice and an opportunity to be heard, dkt. 5 at 2, Petitioner fails to include a claim addressing his potential removal to a third country in the Petition or Application. Accordingly, the Court declines to grant such relief at this time.

[5] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.

5.       Respondents are **ORDERED** to file a status report no later than March 5, 2026, regarding their compliance with this Order; and
6.       Respondents are **ORDERED TO SHOW CAUSE** in writing **no later than seven (7) days from the date of this Order** why the Court should not issue a preliminary injunction.  Petitioner may file a Reply **no later than ten (10) days from the date of this Order**.

Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.